IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN A. GONZALEZ, | ) | |
| Plaintiff, | ) | No. 23-cv-15743 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| JOSE MARQUEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiff Christian Gonzalez brings this action pursuant to 42 U.S.C. §1983, alleging that his Fourteenth Amendment rights were violated when defendant Cook County Sheriff's Officers Edgar Lopez ("Sgt. Lopez"), Michael Borrero ("Officer Borrero"), Zachary Finn ("Officer Finn"), and Jose Marquez ("Officer Marquez") (collectively, the "Officers" or "defendants") used excessive force and/or failed to intervene during an incident at the Cook County Jail on August 14, 2023. Defendants have collectively moved for summary judgment, (Dckt. #37), arguing that: (1) no reasonable jury could conclude the Officers used excessive force and/or failed to intervene during the incident; and (2) they are entitled to qualified immunity. Plaintiff failed to respond to defendants' motion in accordance with the briefing schedule set by the Court. For the reasons set forth below, the Court grants defendants' motion for summary judgment, (Dckt. #37).

**I.      LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present

if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Of course, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Yet, the nonmovant "is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

2

II.     FACTUAL RECORD

    **A. Requirements of Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). If a party fails to respond to the Rule 56.1 statement of uncontested facts, those facts are deemed admitted to the extent they are supported by the evidence in the record. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); L.R. 56.1(e)(3).

Here, because plaintiff is proceeding *pro se*, defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dckt. #36). This notice explains the meaning of a motion for summary judgment, the requirements for responding to both the movant's motion and its Rule 56.1 statement of material facts, and— perhaps most significantly—the consequences of failing to properly respond to a summary judgment motion and statement of material facts under Federal Rule of Civil Procedure 56 and

Local Rule 56.1.

Despite his receipt of the Local Rule 56.2 Notice (and the warnings contained therein), plaintiff failed to respond to defendants' motion for summary judgment at all, let alone submit a response to defendants' statement of material facts. As such, the Court deems defendants' statement of material facts admitted to the extent that the assertions of fact therein are supported by the evidence in the record. *Keeton*, 667 F.3d at 880. The Court does so even in consideration of plaintiff's *pro se* status given that defendants provided plaintiff with the requisite Local Rule 56.2 notice to unrepresented individuals. *See Coleman v. Goodwill Indus. of Se. Wisconsin, Inc.*, 423 Fed.Appx. 642, 643 (7th Cir. 2011). Indeed, it is well settled that "status as a *pro se* litigant does not excuse [a party] from complying with Local Rule 56.1." *Brown v. Erickson*, No. 16 C 50337, 2019 WL 1532887, at *1 (N.D.Ill. Apr. 9, 2019); *Coleman*, 423 Fed.Appx. at 643 ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules.").

### B. Relevant Facts

At all relevant times, plaintiff was a pretrial detainee housed in the Cook County Jail, initially on charges of first-degree murder. (Dckt. #39, Defendants' Statement of Material Facts ("DSOF") ¶¶1-2). Since arriving at the Jail, plaintiff's behavior has caused him to receive additional charges of: (1) first-degree murder deriving from an incident at the Jail; (2) attempted first-degree murder deriving from an incident at the Jail; (3) and four charges of battery to staff deriving from incidents at the Jail. (*Id*. ¶3). At all relevant times, the Officers were employees of the Cook County Sheriff's Office working at the Jail. (*Id*. ¶¶4-7).

On August 14, 2023, plaintiff was housed in Division 9, Tier 1F, a segregation unit, following an incident the day before during which plaintiff assaulted a correctional officer. (*Id*.

¶¶19-20). Plaintiff was upset he was in the segregation unit because he did not have his personal property. (*Id*. ¶¶21-22). At 4:02 p.m. on August 14, 2023, plaintiff was involved in an altercation with officers after he tried to escape his cell and run down the stairs. (*Id*. ¶24). The officers involved in the altercation tackled plaintiff to the ground. (*Id*. ¶25). Although he was not injured during this altercation, plaintiff was escorted to medical where he was cleared of any injury from the take down. (*Id*. ¶29).

Around 4:33 p.m., plaintiff was escorted back to his cell from medical. (*Id*. ¶30). At 4:34 p.m., the defendant Officers tried to remove plaintiff's handcuffs in order to secure him back in his cell. (*Id*. ¶31). Due to security concerns, the process for removal of handcuffs calls for the handcuffed detainee to enter his cell, the cell door to be closed, and then for the detainee to place his hands through the open foodport (or "chuckhole") so that the handcuffs can be removed. (*Id*. ¶32). Once the handcuffs are removed from the detainee, the foodport window is closed and locked. (*Id*. ¶35). This is the preferred method because it ensures that the detainee remains secured in handcuffs until he is safely in his cell. (*Id*. ¶33).

When the Officers attempted to use the preferred method for handcuff removal on plaintiff, he actively resisted the Officers' attempt to secure him in his cell, including first refusing to put his hands in the foodport for uncuffing and later ignoring the Officers' verbal commands to move his hands back in, thereby hindering the Officers' ability to close the foodport. (*Id*. ¶¶34-42). Eventually, the Officers secured the foodport. (*Id*. ¶42). For his part, plaintiff maintains that the Officers closed and locked the foodport on his hand, causing injury to his right third finger, although he testified that "[the Officers] didn't know [his] finger was there at first." (Dckt. #39-2 at 8).

After the foodport incident, plaintiff was transported back to medical. (DSOF ¶45).

While being transported, he refused napkins when asked if he needed anything for his bleeding hand. (*Id*. ¶¶46-47). Plaintiff was treated in the Jail's urgent care on the same day by Dr. Yan Yu Do, who diagnosed a nail avulsion of his right third finger. (*Id*. ¶48). At that time, plaintiff refused removal of his nail and refused dressing of his finger. (*Id*. ¶49). At 2:00 a.m. and 3:00 a.m. on August 15, 2023, Dr. Do offered to remove plaintiff's nail two additional times, but plaintiff again refused. (*Id*. ¶50). Plaintiff returned on the evening of August 15, 2023, at which time Dr. Do removed plaintiff's nail with no complications. (*Id*. ¶51). A few months later, in January 2024, plaintiff demanded and received an x-ray of his right third finger. (*Id*. ¶¶52-53). The x-ray showed no evidence of fracture, dislocation, swelling or other abnormality, and plaintiff's nail eventually grew back. (*Id*. ¶¶54-55).

Both the Office of Professional Review ("OPR") and the Use of Force Supervisory Review investigated plaintiff's allegations of excessive force during the foodport incident. (*Id*. ¶¶59, 62). OPR determined that the evidence did not show any staff misconduct or policy violations. (*Id*. ¶60). The Use of Force Review determined that the force used during the incident was in accordance with the Jail's use of force policies. (*Id*. ¶63).

Again, in this action, plaintiff alleges that Officers Borrero and Marquez violated his Fourteenth Amendment rights when they used excessive force by closing the foodport on his finger and that Sgt. Lopez and Officer Finn failed to intervene. Defendants now seek summary judgment in their favor.

### III. ANALYSIS

As the Seventh Circuit has emphasized, a plaintiff's failure to comply with Local Rule 56.1 "does not, of course, automatically result in judgment for the movant." *Keeton*, 667 F.3d at 884. Instead, "[the movant] must still demonstrate that it is entitled to judgment as a matter of

law." *Id*. In support of their motion, defendants argue that they are entitled to summary judgment because: (1) no reasonable jury could conclude the Officers used excessive force and/or failed to intervene during the incident; and (2) they are entitled to qualified immunity. The Court begins and ends with qualified immunity and determines that defendants are entitled to summary judgment.

### A. Defendants are entitled to qualified immunity.

Government officials like the Cook County correctional officers here are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (cleaned up). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (cleaned up). Although this is ordinarily a two-step process, where the undisputed facts taken in the light most favorable to the plaintiff fail to establish a cognizable violation of constitutional rights, defendants are entitled to qualified immunity. *See, e.g., Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 472 (7th Cir. 1997).

Therefore, the Court begins with an analysis of whether there is any merit to plaintiff's underlying constitutional claims. Once more, plaintiff asserts that he was subjected to excessive force by Officers Borrero and Marquez (in which Sgt. Lopez and Officer Finn failed to intervene) when they closed plaintiff's finger in the foodport on August 14, 2023. The Due Process Clause of the Fourteenth Amendment governs claims of excessive force by a pretrial detainee such as plaintiff. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Under the

Fourteenth Amendment, an officer's use of force is excessive when it amounts to punishment. *Id.* at 397. This can occur when force is used with "an 'expressed intent to punish,'" is "not 'rationally related to a legitimate governmental purpose,'" or "'appear[s] excessive in relation to that purpose'" when viewed objectively. *Id.* at 398, *quoting Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979).

To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case," and depends on factors such as (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force used; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; (6) and whether the plaintiff was actively resisting. *Id.* at 397 (cleaned up). These factors should be considered from the perspective of what a reasonable officer on the scene would have understood, not through the use of hindsight. *Id.* The Seventh Circuit has emphasized that "[w]hether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Harris v. Ealey*, No. 19-CV-2210, 2021 WL 5823513, at *5 (N.D.Ill. Dec. 8, 2021), *quoting Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018).

Here, even viewing the evidence—including the video evidence of the incident—in the light most favorable to plaintiff, the Court concludes, as a matter of law, that Officers Borrero and Marquez used objectively reasonable force against plaintiff when they secured the foodport. As the undisputed record establishes, plaintiff—who has a history of physical altercations with officers and had *just* attempted to escape his cell—intentionally kept his hands in the foodport

8

because he was angry about his missing property. Before closing the foodport, the Officers gave verbal commands directing plaintiff to remove his hands from the foodport, which he ignored. Only then did the Officers close the foodport to secure plaintiff properly in his cell. Moreover, while sympathetic to plaintiff's nail avulsion and any resulting pain, plaintiff initially refused the recommended medical treatment to his injury, his nail grew back, and a subsequent x-ray showed no abnormalities.

These facts, taken together, tip the *Kingsley* factors in defendants' favor and support a finding that Officers Borrero and Marquez's use of force was objectively reasonable and thus did not violate plaintiff's constitutional rights. *See Outlaw v. Newkirk*, 259 F.3d 833, 839-40 (7th Cir. 2001) (no excessive force where the closing of cuffport door in response to prisoner's threat caused pain, swelling, and bruising of prisoner's hand); *White v. Matti*, 58 Fed.Appx. 636, 638 (7th Cir. 2002) (no excessive force where plaintiff "was reaching through the trap with his right arm in violation of prison rules" and suffered lacerations, bruises, cuts, and swelling as a result"); *see also Silas v. Anderson*, No. 22-CV-1051-JBM, 2023 WL 2916554, at *3 (C.D.Ill. Apr. 12, 2023) (no excessive force where plaintiff ignored verbal commands to remove his arm from the chuckhole and a subsequent x-ray showed no abnormalities); *see also Earl v. Dretke*, 177 Fed.Appx. 440, 441 (5th Cir. 2006) (concluding that losing a fingernail and bleeding were no more than *de minimis* injuries). Moreover, because Officers Borrero and Marquez did not use excessive force against plaintiff, any claim for failure to intervene against Sgt. Lopez and Officer Finn also fails. *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005) ("[B]y definition, if there was no excessive force then there can be no failure to intervene."). Where, as here, the undisputed facts taken in the light most favorable to the plaintiff fail to establish a cognizable violation of constitutional rights, defendants are entitled to qualified immunity.

Finally, even if Officers Borrero and Marquez did use excessive force in violation of plaintiff's constitutional rights, plaintiff would be hard-pressed to show that it was "clearly established" on August 14, 2023 that that the type of force the Officers used, *i.e.*, closing the foodport after plaintiff ignored commands to remove his arms, was unlawful under the circumstances in light of the above precedent. *See, e.g.*, *Outlaw*, 259 F.3d at 839–40.

For all of these reasons, defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (Dckt. #37), is granted. Judgment will be entered in favor of defendants and against plaintiff.

**Date: September 12, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**